## In re the MARRIAGE OF Joan C. BRE-THAUER, Petitioner-Appellant,

### and

## Leo Charles Brethauer, Respondent-Respondent.

### No. 60264.

Supreme Court of Missouri, En Banc.

April 28, 1978.

Samuel H. Liberman, II, St. Louis, for petitioner-appellant.

Walton F. Lemay, Clayton, for respondent-respondent.

HENLEY, Judge.

This is an action for dissolution of the marriage of Joan C. Brethauer (petitioner)[1] and Leo Charles Brethauer (respondent). The trial court dissolved the marriage and awarded custody of the younger of two sons to petitioner and the other to respondent. In addition to awarding monthly maintenance to petitioner and support for the son in her custody, the court also entered judgment dividing property acquired by one or both of the parties. Petitioner appealed from this judgment to the Court of Appeals, St. Louis district, complaining only of the division of marital property, asserted to be 1% to petitioner and 99% to respondent. The court of appeals affirmed, but the case was transferred to this court when one judge[2] dissented and certified that he deemed the majority opinion to be contrary to previous decisions of appellate courts of this state.

The parties were married in September, 1950. Four children were born of the marriage, only two of whom, Michael (born 1960) and Timothy (born 1965) were still at home when their parents separated in February, 1975.

Petitioner left the family home in that month, while respondent was out of the state on a business trip. She, with Timothy, moved into an apartment in University City leased in the name of Mark Buchalter, a friend she had known for three years. The older son, Michael, continued to live in the family home in Ballwin with his father.

---

1. Petitioner is the appellant; however, we will refer to the parties by their designation in the trial court.

2. Judge Theodore McMillian.

Petitioner admits that Mr. Buchalter visits her at the apartment "fairly often" and stays overnight on occasion; that she has had sexual relations with Mr. Buchalter since she separated from her husband, but never when Timothy was present.

Petitioner was employed full-time as a drapery seamstress from 1953 to 1968. During this period she worked as a seamstress in the drapery department of a department store and later as head of the department. At another time she had her own drapery business. Her earnings were approximately $200 per week. She returned to work on a part-time basis in June, 1974, but had to quit because of a "back condition," which, she says, continues to bother her. Her average earnings for the part-time work were $200 per month. She has contributed all her earnings to the support of the family.

Before her marriage to respondent she and her brother inherited from their mother a farm located in Illinois. She testified that the value of her interest is $5,000. There is no evidence showing whether this property produces income and, if so, how much, if any, is available to her each year, after payment of taxes and its operating expenses, for use to help support her and Timothy.

Respondent is employed by McDonnell Douglas Corporation and has been for more than 25 years. He has received a salary increase in each of the last several years. In 1975, his salary was approximately $28,000. After deductions for federal and state taxes, premiums for insurance and contributions to his retirement fund or Savings Plan, his "take-home" pay was $1,399.84 per month.

Two major items of property were acquired by the parties during their marriage: (1) their home of the value of $35,000 (minimum) encumbered by a mortgage on which the unpaid balance is $18,000; and (2) an interest in "Fund C McDonnell Douglas Corporation Salaried Employees Savings Plan" which consists of 966 shares of stock in the corporation. Respondent's evidence is that his interest in the Savings Plan has a value of approximately $18,000; but, that it is "not vested." Other assets acquired by them during the marriage and the estimated minimum value of each is: (1) 1971 Oldsmobile, $400; (2) 1962 Triumph, $200; (3) furniture, $700; (4) two unimproved lots in Charlotte county, Florida, $900; a checking account, $2.38.

Petitioner testified that monthly living expenses of herself and Timothy, including tuition for Timothy at a parochial school, is $745. The court awarded her maintenance of $250 per month and support for Timothy of $250 per month.

Respondent testified that his monthly expenses were approximately $493 for payments on the home loan, maintenance of the property, utilities, car payments and insurance. There is no evidence of the cost of his and Michael's needs for usual living expenses.

The judgment, with specific reference to the property involved, is that the "marital property [is] divided as follows:

*To Respondent:* McDonnell Douglas 966 SH. Stock; Real estate at 834 Westwood, Ballwin, Missouri; two lots at Port Charlotte, Florida; 1971 Oldsmobile; furniture and furnishings at Westwood home, except loom in basement, iron table in kitchen and painting in living room and woman's clothes to Petitioner; Lindbergh Bank checking account.

*To Petitioner:* One-half interest in farm at Waterloo, Illinois; 1962 Triumph automobile; * * *."

■ The court obviously erred in considering and finding that petitioner's interest in the Illinois farm was marital property. Respondent disclaims any interest in it. Her interest in the farm was acquired by inheritance before the marriage and was therefore her separate property. Section 452.330, RSMo Supp.1973; *Cain v. Cain,* 536 S.W.2d 866 (Mo.App.1976), discussed in *Note,* Dissolution of Marriage—Division of Property Which Has Increased in Value, 42 Mo.L.Rev. 479 (1977); *Jaeger v. Jaeger,* 547 S.W.2d 207 (Mo.App.1977). Except for the $200 Triumph, petitioner received through

this division of property nothing she did not already own. Contrary to assertions of respondent, the trial court did not set apart to petitioner *as her separate property* her interest in the farm. Had the court made specific findings of fact and conclusions of law, the court no doubt would have avoided falling into this error. Because the court concluded that the interest in the farm was marital property and used it in dividing such property, the judgment must be reversed for this reason alone, if for no other. The court erred also in failing to set apart to petitioner as her separate property her interest in the farm.

If we eliminate from the marital property plaintiff's interest in the farm, and consider it as having been set apart to petitioner as her separate property, as the trial court should have done, the division made between the parties of marital property, looks like this:

| To Petitioner: | (Value) | To Respondent: | (Value) |
|---|---|---|---|
| 1. 1962 Triumph | $200 | 1. Family Home | $35,000.00 |
| | | (Mortgage) | –18,000.00 |
| | | (Net value of home) | $17,000.00 |
| | | 2. Two lots in Florida | $ 900.00 |
| | | 3. 1971 Oldsmobile | $ 400.00 |
| | | 4. Checking Account | $ 2.38 |
| | | 5. Furniture | $ 700.00 |
| | | 6. Interest in McDonnell Douglas Employees Savings Plan | $18,015.00 |
| | | Total | $37,017.38 |

This division of the property between the parties is, as petitioner says: approximately 1% to her and 99% to respondent. Petitioner contends this division is not fair or just and demonstrates that the trial court did not, as required by § 452.330, consider "all relevant factors," including those described in this section of the statutes, in dividing the property.

■ There is no dispute as to the dollar value [3] of the interest in the Savings Plan. The parties agree that it was acquired during the marriage. Consequently, it is presumed to be marital property. Section 452.-330, supra. The only evidence presented relating to this question is respondent's conclusory statement, in response to an interrogatory, that the interest in the Plan is "not vested." Respondent's conclusion does not qualify as substantial evidence sufficient to rebut the statutory presumption.

■ Since the case must be remanded for further proceedings, the parties should be afforded the opportunity, if they desire, to present *facts* from which a determination may be made of the true nature of the interest in the Savings Plan. *Jaeger v. Jaeger*, 547 S.W.2d 207, 212 (Mo.App.1977). There are no facts in this record from which a determination may be made that the interest is not marital property. If this asset is, under the facts and the law, marital property, as the trial court determined, then it appears, on the surface at least, that the court abused its discretion in dividing the property in these proportions. See, e. g., *In re Marriage of Carmack*, 550 S.W.2d 815 (Mo.App.1977); *In re Marriage of Cornell*, 550 S.W.2d 823 (Mo.App.1977). On the other hand, if this interest is not marital property because *not* vested, then the trial court's determination that it is marital property is contrary to a decision of the court of appeals in *In re Marriage of Powers*, 527 S.W.2d 949 (Mo.App.1975).[4] We do

**3.** The value on June 30, 1975.

**4.** *Powers* involved the question of whether the husband's interest in a profit-sharing retirement plan was properly subject to division as marital property under § 452.330, RSMo Supp. 1973. The court of appeals distinguished *Robbins v. Robbins*, 463 S.W.2d 876 (Mo.1971) and held that the husband's interest in the retirement plan was marital property subject to divi-

not express any view of the decision in *Powers,* believing that that is better left to another day and another case in which the facts have been fully developed and in which the trial court has made specific findings and conclusions.

That part of the judgment affecting the separate property of petitioner and dividing marital property should be, and is, reversed and the case is remanded for new trial on these issues. That part of the judgment dissolving the marriage, awarding custody of the children, and support for the child in the custody of petitioner, should be, and is, affirmed. That part of the judgment awarding $250 per month maintenance to petitioner should be, and is, reversed and remanded for redetermination of the amount of maintenance based on the facts found.

All concur.

sion. The court's holding was premised on a finding that the interest in the plan was "vested." An interesting discussion of *Powers* may be found in *Note,* Domestic Relations—Husband's "Vested" Interest in Retirement Plan is Divisible as Marital Property, 42 Mo.L.Rev. 143 (1977).